639 A.2d 448

COMMONWEALTH of Pennsylvania, Appellee,

v.

Al PEOPLES, a/k/a Kevin Mathews, a/k/a Kevin Matthews, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1993.

Decided March 24, 1994.

Marilyn J. Gelb, Philadelphia, for Al Peoples.

Catherine Marshall, Norman Gross, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Atty. Gen.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION*

ZAPPALA, Justice.

This appeal arises from Appellant's conviction and sentence of death for the murder of Sara Brown.[1] We are compelled to review this judgment under Section 9711(h)(1) of the Sentencing Code.

After finding the Appellant guilty of first-degree murder, a sentencing hearing was convened. Two jurors concluded that sufficient evidence of mitigation was presented to establish one mitigating circumstance, 42 Pa.C.S. § 9711(e)(8), but

---

**1.** Appellant was also convicted of robbery, possession of an instrument of crime, unlawful use of a computer and theft. The Appellant received various terms of imprisonment for these convictions, all to run consecutive to each other. No issues have been raised as to these convictions or sentences.

joined unanimously with all the jurors in finding that the aggravating circumstances of torture, 42 Pa.C.S. § 9711(d)(8), commission of a murder while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), and the defendant being convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was able to be imposed, 42 Pa.C.S. § 9711(d)(10), outweighed the mitigating circumstance and imposed the death penalty. Post-trial motions were filed and summarily dismissed by the trial judge. On appeal, we remanded the matter to the trial judge for a hearing on the post-trial motions. *Commonwealth v. Peoples,* No. 61 Eastern District Appeal Docket 1990. Thereafter, a Supplemental Opinion was issued rejecting all of Appellant's remaining alleged errors. This matter is now ripe for review by this Court.

■ Although the Appellant does not challenge the sufficiency of the evidence, we must determine whether the Commonwealth has offered sufficient evidence to establish the elements of first-degree murder beyond a reasonable doubt. *Commonwealth v. Moran,* 535 Pa. 485, 636 A.2d 612 (1993); *Commonwealth v. Jasper,* 526 Pa. 497, 587 A.2d 705 (1991); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), rehearing denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Having reviewed the evidence in the light most favorable to the Commonwealth as the verdict winner, we are satisfied that the Commonwealth has presented sufficient evidence to establish guilt beyond a reasonable doubt.

On September 19, 1987, the body of the victim, Sara Brown, was found brutally bludgeoned on the bathroom floor of the apartment she shared with the Appellant. The medical examiner identified the cause of death as exsanguination due to multiple stab wounds to the chest, stomach, arms and hands, and concluded that death occurred on September 17, 1987. Medical evidence also established that the victim was alive throughout the attack.

Investigators found the blood-covered murder weapon on the bedroom floor and blood stains throughout the apartment. Some of the blood samples matched the Appellant's blood type. The investigators also noted that the victim's credit cards, automated teller machine (ATM) bank card, and numerous pieces of jewelry were missing.

That morning, at approximately 5:00 or 5:30 a.m., Appellant went to his sister's home and told her that he had had a fight with the victim. The sister noticed that Appellant's leg was injured, and later that morning she noticed blood on the banister. Throughout that day, 22 attempts were made to withdraw money from the victim's bank account using her ATM card. On six occasions, the user successfully withdrew money amounting to $600, and on one occasion, a hidden video camera recorded the Appellant attempting to withdraw money using the victim's ATM card.

Later that day, the Appellant hired a jitney driver to transport him to various pawn shops to sell the victim's jewelry, some of which had blood stains. After completing this selling spree, the Appellant directed the jitney driver to drive him to New York City, where the driver left the Appellant. While in New York, the Appellant was arrested for the previous murder of his common law wife. On November 17, 1988, Appellant pled guilty to this murder and received a sentence of 15 years to life imprisonment.

Finally, the evidence established that several months before the victim's death, the Appellant attacked the victim with a pair of scissors, stabbing her in the stomach, arms, and hand.

Based upon the foregoing, we are satisfied that sufficient evidence of guilt was presented to sustain Appellant's conviction.

The first issue raised by the Appellant is whether the trial court's instruction regarding the weight of evidence required in the penalty proceeding was erroneous. The alleged erroneous instruction was as follows:

And what you are doing there, you found aggravating and you found mitigating and you are weighing them as to which

one outweighs the other. And we are not talking about— you see, the legislature didn't tell us how to do this weighing, but they are not speaking of numbers, they are speaking of quality. You look at the aggravating, you look at the mitigating and you see how many have found what each, how important either one of them is or are. And then you will make your decision by that process.

You know, like sometimes you go to the movies and you see it's either four stars, which means it's an excellent movie, or one star, which is very poor movie. In effect, what they are doing is weighing the quality of that movie and that's exactly what you have to do here when you are weighing aggravating and mitigating circumstances.

N.T., January 9, 1990, pp. 56–57.

Appellant argues that this instruction belittled the importance of the death penalty proceeding and invited the jury to undertake "subjective fantasy" by considering their subjective opinions in determining the value of the evidence presented. As a result of this improper consideration, Appellant argues that a substantial risk exists that the death penalty will be inflicted in an arbitrary and capricious manner.

When reviewing a challenge to a part of a jury instruction, we must review the instruction as a whole to determine whether or not it is fair and complete. *Commonwealth v. Saunders,* 529 Pa. 140, 602 A.2d 816 (1992). What is important is the effect of the charge as a whole. Furthermore, with respect to aggravating and mitigating circumstances in a death penalty instruction, it is imperative that the trial court instruct the jury that the weighing process required under Section 9711(c)(1)(iv) of the Sentencing Code involves a *qualitative,* not *quantitative,* analysis. *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989).

Reviewing this instruction in light of *Saunders* and *Billa,* it is clear that Appellant's contention is meritless. The trial court was not attempting to trivialize the process. On the contrary, the court was merely trying to provide the jurors with a common sense example to assist them in an

unfamiliar process.  If anything, the trial court's example, although not required, provided clarification to the jury in everyday terms the type of analysis it needed to undertake. Accordingly, Appellant's first assigned error is meritless.

■  Next, Appellant argues that the prosecutor acted improperly in delivering his summation to the jury during the penalty proceeding, and therefore Appellant should be entitled to a new sentencing hearing.

Notwithstanding what the notes of testimony reflect, Appellant argues that the prosecutor stood before each juror and referring to the Appellant, separately demanded that the juror "kill him."  The notes of testimony reflect to the contrary and state as follows:

> And I submit to you, ladies and gentlemen, every one of you, where there is a runaway locomotive there is a brake to stop it.  Where there is a car rolling on a hill, there is an emergency brake to stop it.  Where there is a raging forest fire, there is what is called a fire brake to stop it.  And in the case of Al Peoples, also known as Kevin Matthews, there is you.  And I would say it twelve times as I look to you in the eye: Stop him.  Stop him.  Stop him.  Stop him. Stop him.  Stop him.  Stop him.  Stop him.  Stop him. Stop him.  Stop him.  Stop him.  Stop this killer of women. Stop this runaway locomotive.  Stop this time bomb.  For what you did, for why you did it and how you did it, for what you did you must die.  Die, Al Peoples, die.  For what you did to Sarah Brown, for what you did to Doreen Brooks, die.

N.T., January 9, 1990, pp. 28–29.

Counsel for Appellant not only insists that the court reporter incorrectly transcribed the prosecutor's remarks, but also that the court reporter failed to note defense counsel's objections to those remarks.  (Appellant's brief p. 4, fn. 2.).[2]  The

2.  Pa.R.A.P. 1926 sets forth the procedure for correcting errors of record.  At no time did Appellant follow this procedure in correcting what he alleges is transcription errors.

trial court agrees with the Commonwealth that the prosecutor did not say "kill him" and that defense counsel did not object.

Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the Defendant so that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Holloway*, 524 Pa. 342, 572 A.2d 687 (1990). In this instance, the cited part of the prosecutor's statement was at the conclusion of his summation. Prior to this statement, the prosecutor indicated that but for the death of Appellant's common law wife in New York, he would not be seeking the death penalty. However, this murder occurred while Appellant was a fugitive from New York. The prosecutor then drew a comparison between Appellant and a runaway locomotive, a runaway automobile, and a raging forest fire. The importance of this comparison in his argument was that there exists a mechanism to correct the problem, and in this instance, the only way to prevent the Appellant from killing again was to impose the death penalty. As such, the effect of the prosecutor's comments did not rise to the level of prejudicing the jury by causing any bias or hostility towards the Appellant. Therefore, there is no merit to this alleged error.

Finally, the Appellant alleges that the trial court erred in the penalty proceeding by refusing to instruct the jury, at Appellant's request, in accordance with *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).

During the penalty proceeding, the Appellant offered evidence of his good behavior while he was incarcerated at Holmesburg Prison from August 1989 to the trial date, January 1990. By way of stipulation entered into by the Appellant and the Commonwealth, Appellant offered evidence as to his good workmanship while employed at various businesses. Based upon this evidence, Appellant requested a specific instruction to the jury that this evidence demonstrated that the Appellant would not pose a danger if incarcerated for life, rather than being executed. The trial court denied this

request, holding that he was limited to the statutory instructions on mitigating factors as set forth in the Sentencing Code, and in any event, this evidence could properly be considered as "any other evidence of mitigation concerning the character and record of the Defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8).

In *Skipper v. South Carolina*, supra, the issue was whether the trial court erred in excluding evidence regarding the defendant's good behavior while in prison prior to trial during the penalty proceeding. There, the United States Supreme Court reversed the judgment of sentence because the trial judge's refusal to allow the defendant to place before the sentencing jury all relevant evidence in mitigation of punishment impeded the sentencing jury's ability to carry out its task of considering all relevant facts of the character and record of the defendant in imposing the appropriate sentence. Such action violated the Federal Constitution as more fully explained in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

As can be seen, Appellant's reliance upon *Skipper* is misplaced. All *Skipper* requires is that a defendant be given the opportunity to present all relevant evidence in mitigation. Appellant then argues that we should require a specific instruction on the use of this unspecified mitigation evidence. In *Commonwealth v. Copenhefer*, 526 Pa. 555, 587 A.2d 1353 (1991), we found no error in the trial court's refusal to instruct the jury that the defendant's lack of prior record constituted a mitigating circumstance as a matter of law. Likewise, we find no error here. It is defense counsel's obligation during his summation to explain to a jury how to evaluate any evidence in mitigation. Here, the relevant evidence was admitted by stipulation, the trial judge instructed the jury under Section 9711(e)(8) of the Sentencing Code, and the jury returned its verdict in accordance with that instruction. Therefore, this argument fails as meritless.

■ Finally, we have examined the record and find the sentence imposed was not a product of passion, prejudice, or

any other arbitrary factor. Furthermore, the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases based upon a review of the data compiled by the Administrative Office of the Pennsylvania Courts.

Accordingly, we affirm the judgment of sentence.[3]

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.

---

**3.** The Prothonotary of the Supreme Court is directed to transmit a full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor. 42 Pa.C.S. § 9711(i).