**COMMONWEALTH of Pennsylvania,
Appellant,**

**v.**

**Michael J. TRAVAGLIA, Appellee.**

Superior Court of Pennsylvania.

Submitted Nov. 26, 2001.
Filed Feb. 19, 2002.

John W. Peck, Asst. Dist. Atty., Greens-
burg, for Commonwealth, appellant.

Dante G. Bertani, Public Defender,
Greensburg, for appellee.

Before STEVENS, LALLY–GREEN,
and HESTER, JJ.

STEVENS, J.

¶ 1 The Commonwealth appeals from the
order entered in the Court of Common
Pleas of Westmoreland County disposing
of the Commonwealth's motion *in limine*
filed prior to sentencing. On appeal, the
Commonwealth contends the trial court
erred in indicating (1) it is limiting the
Commonwealth's use of Appellee's previ-
ous murder convictions at the death sen-

tencing hearing,[1] and (2) it is going to give an instruction pursuant to Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).[2] We reverse and remand for further proceedings.

¶ 2 The relevant facts and procedural history are as follows: During the early morning hours of January 3, 1980, Appellee shot and killed Police Officer Leonard Clifford Miller, Appellee proceeded to a jury trial, and he was convicted of first-degree murder and conspiracy to commit first-degree murder. Appellee was sentenced to death, and he filed an appeal to the Pennsylvania Supreme Court, which affirmed the judgment of sentence. Commonwealth v. Travaglia, 502 Pa. 474, 467 A.2d 288 (1983). Appellee filed a petition for writ of certiorari, which was denied by the United States Supreme Court. Travaglia v. Commonwealth, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984).

¶ 3 Appellee filed a petition for collateral relief under the now repealed Post Conviction Hearing Act, 42 Pa.C.S.A. § 9541 et seq. (PCHA), which was denied. Appellee filed an appeal to this Court, and we affirmed the denial. Commonwealth v. Travaglia, 359 Pa.Super. 630, 515 A.2d 620 (1986). Appellee filed a petition for allowance of appeal with the Pennsylvania Supreme Court and a writ of certiorari with the United States Supreme Court, both of which were denied.

¶ 4 On June 8, 1990, then Governor Robert Casey signed a warrant for the execution of Appellee, and, on September 9, 1990, the Honorable Allen N. Bloch issued a stay of execution to permit Appellee to file a petition for writ of habeas corpus. Appellee filed a second PCHA petition, which was denied. Appellee filed an appeal to the Pennsylvania Supreme Court, which affirmed the sentence of death. Commonwealth v. Travaglia, 541 Pa. 108, 661 A.2d 352 (1995). The United States Supreme Court denied Appellee's petition for writ of certiorari.

¶ 5 On May 21, 1996, Appellee filed another petition for writ of habeas corpus in federal court, and the western district court remanded for resentencing. The district court recommended that, at the resentencing hearing, no reference to Appellee's guilty pleas in unrelated cases should be made during the Commonwealth's case-in-chief. Appellee filed in the Court of Common Pleas a motion seeking to bar his resentencing pursuant to Commonwealth v. McPhail, 547 Pa. 519, 692 A.2d 139 (1997), which was denied by the court. Appellee's appeal to this Court and the Pennsylvania Supreme Court proved to be fruitless.

¶ 6 Appellee's resentencing hearing was scheduled for October 16, 2000, and, during a pre-trial conference, Appellee indicated that he would be introducing his testimony, his prison record, and the testimony of two experts to establish Appellee is a model prisoner, religious, and has changed since being in prison. On Octo-

---

**1.** Appellee pleaded guilty to the killing of William Nichols, Peter Levato, and Sue Newcomer.

**2.** In its notice of appeal, the Commonwealth contended that the court's order terminated or substantially handicapped the prosecution, and, therefore, we are permitted to review the Commonwealth's appeal. Pa.R.A.P. 311(d), 42 Pa.C.S.A. See Commonwealth v. Dugger, 506 Pa. 537, 486 A.2d 382 (1985). To the

extent Appellee argues that the Commonwealth's appeal is premature, we note that the Commonwealth is permitted to take appeals from orders regarding motions in limine under Pa.R.A.P. 311(d). While generally the motion in limine pertains to pre-trial proceedings, we conclude that the same rules apply to a jury sentencing hearing case since the Commonwealth will lose its right to appeal if it does not do so immediately.

ber 4, 2000, the Commonwealth filed a motion *in limine* in which it sought a ruling as to the use of Appellee's previous homicide convictions during rebuttal of Appellee's character testimony. By opinion and order dated October 11, 2000, the trial court ruled that evidence of the previous homicides could not be used unless the defense "opened the door." The trial court specifically held that evidence presented by the defense relating to Appellee's good behavior in prison and character evidence relating to periods of time not encompassing the homicides did not constitute "opening the door." However, the trial court held that any evidence which suggested that the offense was generally out of character for Appellee or which otherwise created a false impression that Appellee did not participate in the previous offenses constituted "opening the door." Also, the trial court ruled that it would not admit the testimony of Dr. Daniel Greenfield, one of Appellee's experts, since he failed to state his opinions to a reasonable degree of medical certainty.

¶ 7 On October 13, 2000, prior to the resentencing hearing, the Commonwealth filed a notice of appeal to this Court. The Court of Common Pleas did not order the Commonwealth to file a statement pursuant to Pa.R.A.P.1925(b), no such statement was filed, and the lower court did not file a Pa.R.A.P.1925(b) opinion.

¶ 8 The Commonwealth first contends that the trial court erred in limiting the use of Appellee's previous murder convictions for purposes of impeaching Appellee's character at the death sentencing hearing. We agree.

The admission of evidence is a matter vested in the sound discretion of the trial court, whose decision thereon can only be reversed by this Court upon a showing of an abuse of discretion. In determining whether certain evidence should be admitted, the trial court must weigh the evidence and probative value of such evidence against the prejudicial impact of that evidence.

*Commonwealth v. Jones,* 546 Pa. 161, 173, 683 A.2d 1181, 1193 (1996) (citations omitted).

¶ 9 Here, the record reveals that, in exchange for guilty pleas relating to Levato, Newcomer, and Nichols, the Commonwealth agreed that it would not use Appellee's guilty pleas, as well as the circumstances surrounding those murders, at Appellee's resentencing hearing with regard to Officer Miller. The Commonwealth admits that, pursuant to the agreement and previous trial court rulings, it cannot use the murders in its case-in-chief and that it is limited to introducing the evidence only if Appellee "opens the door." [3] However, the Commonwealth disagrees with the trial court's conclusion as to what evidence "opens the door" for the use of the previous convictions. [4] The Commonwealth specifically contends that

---

**3.** During Appellee's first sentencing hearing, the trial court would not permit Appellee's previous convictions to be introduced into evidence unless the defense created the wrong impression to the jury. N.T. 1/31/1981 at 1407–1409.

**4.** We note that Appellee did not appeal from the trial court's order and has indicated in his brief that, for purposes of this appeal, he is not contending that the prior convictions may not be introduced under any circumstances.

Rather, Appellee argues in support of the trial court's order. As such, we need not decide whether the Commonwealth's agreements with Appellee prevents the introduction of the previous convictions for any purpose. The only issue before us is, assuming that the Commonwealth may use the prior convictions to rebut Appellee's character testimony during resentencing, did the trial court err in limiting what character testimony the Commonwealth may rebut.

it should be permitted to introduce evidence of the other convictions if Appellee offers mitigating evidence by testifying that he has been a model prisoner for the last twenty years, has adjusted well to prison, is a different person than he was prior to prison, and is now a Christian.[5]

■ ¶ 10 The Supreme Court has held that proof of a convicted felon's good prison record and changes in character made while in prison are proper mitigating circumstances under 42 Pa.C.S.A. § 9711(e)(8).[6] *Commonwealth v. Peoples,* 536 Pa. 326, 639 A.2d 448 (1994); *Commonwealth v. Williams,* 524 Pa. 218, 570 A.2d 75 (1990). That is, a convicted felon may establish his good character by offering evidence concerning his prison record, personality changes made during prison, and the fact he has "discovered" religion. *Commonwealth v. Fisher,* 559 Pa. 558, 741 A.2d 1234 (1999). The Pennsylvania Supreme Court has held that a defendant may be questioned about his previous convictions where a defendant testifies during trial or at sentencing concerning his good character. *Fisher, supra;* 42 Pa.C.S.A. § 5918.

A defendant is undoubtedly allowed to present any evidence "relevant and admissible" to any mitigating circumstance, including any evidence "concerning the character and record of the defendant...." 42 Pa.C.S.A. § 9711(a)(2) and (e)(8). However, it is equally clear that the defendant is not entitled to present, without challenge or rebuttal

by the Commonwealth, false or misleading evidence or to create a false impression of his character or record.

*Commonwealth v. O'Shea,* 523 Pa. 384, 404, 567 A.2d 1023, 1032 (1989).

■ ¶ 11 In the case *sub judice,* Appellee may present testimony that he is a model, religious prisoner in order to establish his good character. Implicit in Appellee's argument is the assertion that he loves his fellow man, respects the law of God, and is non-violent. However, the Commonwealth is entitled to present evidence, i.e., Appellee's prior convictions, to the jury suggesting other or additional motives for Appellee's good prison record and to rebut Appellee's non-violent character testimony. As such, we conclude that the trial court erred in holding that the Commonwealth is not permitted to question Appellee about his previous convictions if he testifies or presents other evidence concerning his prison record, personality changes in prison, or new found religion. Simply put, we conclude that the trial court erred in holding that the phrase "putting one's character in issue" does not include one's prison record or changes made while in prison.

■ ¶ 12 The Commonwealth's final contention is that the trial court erred in indicating that it is going to give an instruction pursuant to *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), even if Appellee's future dangerousness is not placed at issue

---

**5.** To the extent the Commonwealth argues that evidence of Appellee's previous convictions should be permitted to rebut Dr. Daniel Greenfield's testimony, we find no relief is due at this stage in the proceedings. The trial court stated in its order that Dr. Greenfield's testimony, in its present form, is not admissible. However, since Appellee has indicated that he is going to enter into evidence his prison record, the expert testimony of Dr. Steven Noffsinger, and his own testimony

about the changes he has undergone in prison, we will address the use of the prior convictions to rebut this evidence.

**6.** Section 9711(e)(8) provides that "[m]itigating circumstances shall include the following: (8) Any other evidence concerning the character and record of the defendant and the circumstances of his offense."

during sentencing.[7] In its opinion, the trial court stated that, pursuant to Chief Justice Flaherty's dissent in *Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344 (1998), the court is going to tell the jury at the outset that it must either sentence Appellee to death or to life without the possibility of parole. The Commonwealth contends that this is tantamount to a *Simmons* instruction and that the trial court may give an instruction pursuant to *Simmons only* if Appellee's future dangerousness is raised. Appellee, on the other hand, contends that the trial court may give a *Simmons* instruction even if future dangerousness is not at issue, but must do so if Appellee's future dangerousness is raised.

¶ 13 There is no doubt that, if the Commonwealth raises the future dangerousness of Appellee as an issue, and Appellee requests an instruction that "life imprisonment" means that Appellee would spend the rest of his life in prison without the possibility of parole, it would be a denial of due process for the trial court to refuse such an instruction.[8] *Simmons, supra.* At issue is whether the trial court may inform the jury that "life imprisonment" means life without the possibility of parole in the absence of the Commonwealth raising the future dangerousness of a defendant. After a careful review, we conclude that it may not.

¶ 14 There is no dispute that, prior to the United States Supreme Court's decision in *Simmons*, "the law in Pennsylvania expressly prohibited juries from being informed that life meant life without parole." *Commonwealth v. Thompson*, 559 Pa. 229, 245, 739 A.2d 1023, 1032 (1999) (citation omitted). *See Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317 (1996). Following *Simmons*, the Pennsylvania Supreme Court has examined numerous appeals where an appellant claimed that the trial court should have given an instruction indicating that "life imprisonment" means life without the possibility of parole. Consistently, the Pennsylvania Supreme Court has held that *Simmons* creates an exception as to when the jury may be informed that "life imprisonment" means life without the possibility of parole and that *Simmons* "applies only where the defendant's future dangerousness is at issue." *Commonwealth v. Young*, 561 Pa. 34, 68, 748 A.2d 166, 183 (citation omitted). *See Commonwealth v. Hawkins*, —— Pa. ——, 787 A.2d 292 (2001); *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859 (2000); *Speight, supra.* As such, we conclude that, if the future dangerousness of Appellee is not at issue in this case, the trial court may not inform the jury that it must sentence Appellee to death or life in prison without the possibility of parole. While we acknowledge that a minority of the Pennsylvania Supreme Court is of the view that a *Simmons* instruction should be given in

---

**7.** In *Simmons*, the defendant was convicted of murder, and the prosecutor argued during the penalty phase that the jury should consider the defendant's future dangerousness. The defendant asked the lower court to instruct the jury that "life imprisonment" meant life without the possibility of parole. The trial court refused. The United States Supreme Court held that where the future dangerousness of a defendant is raised, and state law prohibits the defendant's release on parole, due process requires that the sentencing court grant the defendant's request to inform the jury that defendant is parole ineligible.

**8.** The Supreme Court has held that evidence of a defendant's prior convictions does not raise the issue of future dangerousness for the purposes of a *Simmons* instruction. *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763 (1998). That is, if the Commonwealth introduces evidence of Appellee's previous convictions, the trial court is not required to give a *Simmons* instruction on this basis alone.

all capital cases, such is not the current majority position in this Commonwealth. Moreover, neither the federal constitution, state constitution, nor Pennsylvania statute, which governs sentencing, requires that the jury be informed that "life imprisonment" means life without the possibility of parole. *See* 42 Pa.C.S.A. § 9711. Any extension of *Simmons* is a policy decision best left to the legislature.

■ ■ ¶ 15 Finally, we note that the Commonwealth argues that if it places Appellee's future dangerousness at issue, the trial court's jury instruction must include not only an indication that "life imprisonment" means life without the possibility of parole, but also that "the Governor has the power to grant a commutation of a sentence of life or death if based on the recommendation of the Board of Pardons following a public hearing." *Commonwealth v. Trivigno*, 561 Pa. 232, 256, 750 A.2d 243, 257 (2000) (Newman, J., plurality opinion).[9] We agree and instruct the court to give such an instruction if the future dangerousness of Appellee is at issue during the sentencing hearing.

¶ 16 Reversed and Remanded for proceedings consistent with this decision. Jurisdiction relinquished.

9. While *Trivigno* is a plurality decision, we   specifically adopt its reasoning in this case.