J-A19006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEBBIE RAMSEUR :
:
Appellant : No. 1103 EDA 2018

Appeal from the Judgment of Sentence March 5, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001352-2017,
CP-46-CR-0006381-2016

BEFORE: PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED JANUARY 6, 2020**

Kebbie Ramseur appeals from the judgment of sentence entered in the

Montgomery County Court of Common Pleas, following a stipulated bench trial

in which he was found guilty of corrupt organizations, attempted burglary, and

conspiracy to commit burglary. Ramseur challenges the denial of his motions

to suppress and the denial of his motion to dismiss pursuant to Pa.R.Crim.P.

Rule 600. After careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Ramseur was one of five co-conspirators in a sophisticated criminal enterprise responsible for committing a string of burglaries in Montgomery, Chester, and Delaware counties.[1] This large-scale burglary ring targeted affluent homes, stealing high value and easily transportable items such as jewelry, designer purses, and cash. The police were able to link Ramseur and his confederates to the burglaries through cellular phone records; surveillance videos; DNA evidence; and stolen property.

The Commonwealth charged Ramseur and the other members of the criminal enterprise with several counts of corrupt organizations and conspiracy to commit burglary. Ramseur filed pre-trial motions, challenging car stops in Whitpain Township, Pennsylvania and Cherry Hill, New Jersey; a search of a co-defendant's home and the phone records obtained from the search; allegedly unreliable expert testimony; an alleged violation of the speedy trial rule; and an allegedly defective search warrant. The trial court addressed these motions during a three-day suppression hearing.

At the suppression hearing, the Commonwealth presented evidence of the contested car stops. First, Sergeant Peter Bendetti of the Cherry Hill, New Jersey Police Department testified he responded to an attempted home invasion and encountered a parked vehicle with its lights turned off, in a dead-

_____

[1] The other co-conspirators involved in the criminal enterprise were Jerrel Jaynes, Shron Linder, Ralph Mayrant, and Wasim Shazad. **See** Affidavit of Probable Cause.

end area of the neighborhood. Inside the vehicle were Shron Linder and Ralph Mayrant. During the encounter, neither of the men could explain their presence in the neighborhood, and so Sergeant Bendetti asked them to step out the car. After conducting a warrant check, Sergeant Bendetti arrested Linder because he had an active warrant.

Next, Officer Francis Rippert of the Whitpain Township, Pennsylvania Police Department testified he responded to a report of three individuals in a housing development with flashlights. Following his arrival, Officer Rippert observed a parked car, with its lights on. Officer Rippert approached the vehicle and saw Ramseur in the driver's seat and Jerrel Jaynes and Linder in the passenger seats. At first, Rippert did not suspect the men of criminal activity. However, as the encounter continued, they exhibited signs of nervousness and provided conflicting explanations as to why they were parked in the development. Officer Rippert also noted the vehicle contained suspicious items, in plain view, such as masks and gloves. In light of this interaction, Officer Rippert conducted a warrant check and discovered Ramseur and Jaynes had active warrants. Both men were then placed under arrest.

In addition, the Commonwealth addressed Ramseur's other claims during the pretrial suppression hearing. Specifically, the Commonwealth countered that Ramseur failed to establish a cognizable interest upon which he could challenge the search of Mayrant's home and the phone records obtained as a result. This evidence, in particular, showed that Ramseur was in contact with Mayrant at the time of the burglaries. The Commonwealth also

refuted allegations that it executed a defective search warrant on Ramseur's home and refiled the criminal complaint to circumvent the speedy trial rule. Finally, the Commonwealth argued that its expert witness, Detective Kerr, was qualified to testify as to Ramseur's location during the burglaries via cellphone records.

The trial court denied Ramseur's motions. Immediately after the denial of his motions, Ramseur proceeded to a stipulated bench trial in which the Commonwealth incorporated the affidavits of probable cause for each docket. On Docket 1352-2017, the trial court found Ramseur guilty of one count of corrupt organizations and six counts of conspiracy to commit burglary.[2] On Docket 6381-2016, Ramseur was found guilty of one count of attempted burglary and four counts of conspiracy to commit burglary.[3] The trial court sentenced Ramseur to an aggregate sentence of 10 to 20 years' imprisonment on both dockets in addition to restitution. This appeal is now properly before us.

On appeal, Ramseur presents five issues for our review:

> 1. [Whether] the Trial Court err[ed] in failing to grant the Defendant's motions which sought the suppression of the fruits of the two car stops: one in Cherry Hill, New Jersey and one in Whitpain Township, Pennsylvania, when police in both jurisdictions lacked reasonable suspicion or probable

---

[2] **See** 18 Pa. C.S.A. §§ 911(b)(3), 3502(a)(2), and 903.

[3] **See** 18 Pa. C.S.A. §§ 3502(a)(2), 901(a), and 903.

- 4 -

cause to stop the vehicles at all or to seize the Defendant's person (in the Whitpain, PA stop), thus leading to the development of evidence that was fruit of the poisonous tree in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the U.S. Constitution?

2. [Whether] the Trial Court err[ed] in denying Defendant's motion to preclude testimony of Detective Kerr as an expert in cell phone triangulation when the Detective could not answer the most basic of technological questions regarding how cellular phone towers operate and further could not define the term "General vicinity" in any sort of meaningful way?

3. [Whether] the Trial Court err[ed] in failing to dismiss criminal charges which originated in Delaware County, Pennsylvania that were charged well outside the time limits permitted for in Rule 600, which charges were re-filed in Montgomery County to evade the Commonwealth's duty to bring Defendant to trial within 365 days of the initial (Delaware County) criminal complaint?

4. [Whether] the Trial Court err[ed] by failing to suppress all evidence gained in reliance upon the illegal search of co-defendant Mayrant's house, including but not limited to the use of cell tower location technology to pinpoint Defendant's location during relevant time periods via Defendant's cell phone information?

5. [Whether] the Trial Court err[ed] by failing to suppress all evidence obtained at 1433 Kerper Street, based both upon Appellant's claim that the warrant issued based upon material misrepresentations of the facts of the investigation including false statements regarding Defendant's involvement in other burglaries when law enforcement knew that Defendant had not been identified as part of a photo array prior to the issuance of the warrant and because the time of entry into 1433 Kerper Street and the time that it took to search that property were not as stated on the warrant inventory and the warrant was not on the property at the time the search commenced. The warrant was overbroad on its face and all fruits of that search should have been suppressed under Article I, Section 8 of the

Pennsylvania Constitution and the Fourth Amendment of the United States Constitution?

Appellant's Brief, at 9-10.

In his first issue, Ramseur contends the trial court erred in denying his suppression motions challenging the police interactions in Cherry Hill, New Jersey and Whitpain Township, Pennsylvania. **See** Appellant's Brief, at 19, 28. Because each car stop implicates differing constitutional jurisprudence relative to the Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution, we will address these challenges separately.

In reviewing the denial of a suppression motion, we must determine whether the record supports the lower court's factual findings and whether the legal conclusions drawn from those facts are correct. **See Commonwealth v. Raglin**, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions de novo. **See Commonwealth v. Hughes**, 836 A.2d 893, 898 (Pa. 2003).

First, Ramseur contends that, even though he was not present during the police interaction in Cherry Hill, N.J., he has standing to challenge the car stop and a privacy interest in the evidence seized by police. In particular, he asserts that the evidence from the car stop served as a factual basis underlying his convictions. **See** Appellant's Brief, at 20-22.

The suppression court found that Ramseur failed to demonstrate that he has standing to challenge the Cherry Hill stop. In Pennsylvania, our rules

of criminal procedure place the burden of production and persuasion on the Commonwealth to show that the search and/or seizure was constitutional. *See* Pa.R.Crim.P. 581(H). However, a defendant cannot prevail upon a suppression motion unless he demonstrates standing and a privacy interest in the premises searched. *See Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa. Super. 2009).

"Standing requires a defendant to demonstrate one of the following: (1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element of possession; or (4) a proprietary or possessory interest in the searched premises." *Id*., at 435.

Ramseur contends he has standing to challenge the Cherry Hill stop pursuant to the third basis – that possession at the time of the search is an essential element of the Commonwealth's case. *See* Appellant's Brief, at 19-20. Ramseur fails to identify the item the Commonwealth was required to prove he possessed at the time of the stop. He references a watch found in the car that the Commonwealth asserted was stolen during one of the burglaries. But even here, Ramseur does not elucidate how his possession of the watch at the time of the stop was an essential element of the Commonwealth's case.

To the contrary, the record reveals that the Commonwealth used evidence of the stop to demonstrate that the conspirators were nearby during separate burglaries. The Commonwealth argued for an inference that Mayrant

and Linder were present at these locations at these times in furtherance of the conspiracy to burgle the residences.

Indeed, Ramseur concedes that the Commonwealth did not charge him with "possessing any contraband at the time of the Cherry Hill interaction[.]" Appellant's Brief, at 18. As Ramseur has not established that his possession of any contraband found at the Cherry Hill stop was an essential element of the Commonwealth's case, he has not established the court erred in finding he did not have standing to challenge the constitutionality of the stop.

In addition, a defendant must also establish a legitimate expectation of privacy in the area searched or the item seized. *See Commonwealth v. Millner*, 888 A.2d 680, 692 (Pa. 2005). "An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable." *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa. Super. 2005) (citation omitted).

Even if Ramseur had standing, he failed to establish an expectation of privacy in the vehicle. *See Jones*, 874 A.2d at 118. Therefore, this challenge is without merit.

Second, Ramseur contends that Officer Rippert failed to establish either reasonable suspicion or probable cause to seize him during the Whitpain stop. He disputes the trial court's finding that the interaction was a mere encounter that turned into an investigative detention, supported by a reasonable, articulable belief that Ramseur was engaged in criminal activity. *See*

Appellant's Brief, at 32. In the alternative, Ramseur argues that the police-citizen interaction from its inception was an investigative detention without reasonable suspicion. ***See id***., at 30.

A police-citizen encounter may implicate the liberty and privacy interests of the citizen as guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution. ***See Commonwealth v. Smith***, 172 A.3d 26, 31 (Pa. Super. 2017). Fourth Amendment jurisprudence recognizes three levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. ***See id***., at 32.

The first of these encounters is a mere encounter, which need not be supported by any level of suspicion, as it carries no official compulsion for a citizen to stop or respond. ***See Raglin***, 178 A.3d at 871. The second, an investigative detention, must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not constitute an arrest. ***See Commonwealth v. Baldwin***, 147 A.3d 1200, 1202 (Pa. Super. 2016). Finally, a custodial detention or an arrest must be supported by probable cause. ***See Commonwealth v. Collins***, 950 A.2d 1041, 1046 (Pa. Super. 2008).

The difference between an investigative detention and a mere encounter is whether the individual was seized by the police. ***See Commonwealth v. Au***, 42 A.3d 1002, 1004 (Pa. 2012). "[A] person is seized only when, by means of physical force or show of authority, his freedom of movement is

restrained." ***U.S. v. Mendenhall***, 446 U.S. 544, 553 (1980) (internal quotation omitted). To that end, courts must employ a totality of the circumstances approach, with no single factor dictating the ultimate conclusion as to whether there was a seizure. ***See Commonwealth v. Strickler***, 757 A.2d 884, 890 (Pa. 2000).

Officer Rippert's initial interaction with Ramseur constituted a mere encounter, rather than an investigative detention. Here, in light of the circumstances, it was reasonable for Officer Rippert to pull alongside Ramseur's car and inquire as to whether he was lost. ***See*** N.T., Suppression Hearing, 12/04/17, at 83. Further, the record reflects that Officer Rippert did not activate his emergency lights; he did not instruct Ramseur to turn his car off; and his vehicle did not obstruct Ramseur from leaving the scene. ***See id***., at 82-83. As such, there is no evidence that Officer Rippert displayed the type of physical force or authority necessary to find the encounter to have been an investigative detention from its inception. ***See Mendenhall***, 446 U.S. at 553.

However, the encounter later ripened into an investigative detention, as Ramseur's freedom of movement was restrained. ***See*** N.T., Suppression Hearing, 12/04/17, at 115. The salient question now becomes whether Officer Rippert possessed reasonable suspicion of criminal activity to support that investigative detention.

To conduct an investigative detention, police must have reasonable suspicion of criminal activity. ***See Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012). Reasonable suspicion arises when an officer has reason

to believe that criminal activity is afoot. ***See Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999). Even innocent factors, viewed together, may arouse reasonable suspicion that criminal activity is afoot. ***See id***., at 676.

We conclude the facts adduced by Officer Rippert provided him with reasonable suspicion to conduct an investigative detention. The car was parked in a housing development under construction; all of the occupants provided conflicting explanations as to their presence in the neighborhood; they acted extremely nervous; and the vehicle contained suspicious items such as masks, gloves, and flashlights ***See*** N.T., Suppression Hearing, 12/04/17, at 88, 99-100. Additionally, Linder's refusal to provide Officer Rippert with the purse under the seat, which appeared to contain a police scanner and two-way radios, provided further reason to suspect the vehicle's occupants were involved in criminal activity. ***See id***., at 85. As such, Ramseur's challenge here is meritless.

Next, Ramseur contends the trial court erred in denying his motion to preclude Detective Kerr's testimony as an expert witness. He argues Detective Kerr lacked the proper expertise to testify regarding the mechanics of cellular phone operations in the case due to his lack of knowledge on the subject. ***See*** Appellant's Brief, at 36-37.

The admission of evidence is a matter vested in the discretion of the trial court and can only be reversed upon a showing of an abuse of discretion. ***See Commonwealth v. Travaglia***, 792 A.2d 1261, 1263 (Pa. Super. 2002).

As stated in its opinion, the trial court deferred ruling on Detective Kerr's qualifications as an expert witness until after voir dire at trial. *See* Trial Court Opinion, 8/15/18, at 13. Nonetheless, "[Ramseur] elect[ed] a stipulated bench trial that did not require the testimony of Detective Kerr." *See id*. And so there was no admission of this expert testimony because Ramseur failed to stipulate to it. For that reason, this issue is without merit.

Ramseur alleges next the trial court erred in denying his Rule 600 motion in which he claimed the Commonwealth violated his right to a speedy trial. Ramseur argues that, because the Commonwealth filed its initial criminal complaint on August 17, 2016, the date by which the Commonwealth had to bring him to trial was August 16, 2017. *See* Appellant's Brief, at 38. Therefore, since his stipulated bench trial did not commence until December 6, 2017, Ramseur asserts the Commonwealth committed a Rule 600 violation. *See id*., at 42-43.

In reviewing Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. *See Commonwealth v. Hill*, 736 A.2d 578, 581 (Pa. 1999). The proper scope of review is limited to the Rule 600 evidentiary hearing, and the findings of the trial court. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004). Further, we must view the facts in the light most favorable to the prevailing party. *See Commonwealth v. Jackson*, 765 A.2d 389, 392 (Pa. Super. 2000).

As a general rule, the Commonwealth must bring a defendant to trial within 365 days of the date the complaint is filed. *See* Pa.R.Crim.P

600(A)(2)(a). However, if trial commences more than 365 days after the filing of the complaint, a defendant is not automatically entitled to discharge pursuant to Rule 600. *See Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015).

There are situations where a court must account for any excludable time and excusable delay. *See Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Excludable time is any period of delay that is attributable to the defendant or his counsel. *See Commonwealth v. Matis*, 710 A.2d 12, 16 (Pa. 1998). Excusable delay, in contrast, is any period of delay that is the result of circumstances beyond the Commonwealth's control despite its due diligence. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. 2007).

Our courts employ a three-step inquiry for evaluating whether there is a Rule 600 violation. We begin by calculating the "mechanical run date," which is 365 days after the complaint was filed. *See Commonwealth v. Wendel*, 165 A.3d 952, 956 (Pa. Super. 2017). Then, we determine if any excludable time and excusable delay exists. *See id*. And, finally, we add the amount of excludable time and excusable delay, if any, to the mechanical run date in order to compute the adjusted run time. *See id.*

We note there is a dispute among the parties as to the mechanical run date here. Ramseur asserts the mechanical run date is 365 days from the filing of the Delaware County criminal complaint on August 17, 2016. *See* Appellant's Brief, 38. Conversely, the Commonwealth claims the appropriate date for our Rule 600 analysis is the date in which the Commonwealth refiled

the initial complaint in Montgomery County; January 20, 2017. **See** Appellee's Brief, at 36.

When there are multiple identical criminal complaints filed in a case, a determination must be made as to whether the Commonwealth intended to evade the timeliness requirements of Rule 600 by withdrawing the charges and then refiling them at a later date. **See Commonwealth v. Peterson**, 19 A.3d 1131, 1141 (Pa. Super. 2011). If the Commonwealth withdraws the first complaint to avoid a Rule 600 violation and refiles the charges afterwards to circumvent that rule, then the mechanical run date starts from the filing of the initial complaint. **See Commonwealth v. Claffey**, 80 A.3d 780, 786 (Pa. Super. 2013). However, where the prosecution has not attempted an end run around the rule, the appropriate run date starts when the Commonwealth files the subsequent complaint. **See Peterson**, 19 A.3d at 1141.

The trial court did not make an explicit finding on whether the Commonwealth re-filed the criminal complaint in an effort to circumvent Rule 600. The court merely addressed Ramseur's argument on its face and found that various requests for continuances by defense counsel constituted excludable time sufficient to extend the adjusted run date beyond the date of the stipulated bench trial.

On appeal, Ramseur does not argue that the Commonwealth attempted to evade Rule 600's dictates. Nor does our review of the record indicate any evidence to support this assertion. Rather, the record is entirely consistent with the conclusion that the Commonwealth re-filed the complaint in an effort

to consolidate the criminal charges that were pending in separate counties. Hence, viewing the record in a light most favorable to the prevailing party below, we conclude the stipulated bench trial that occurred on December 6, 2017, was within 365 days of January 20, 2017, the date the Commonwealth re-filed the criminal complaint. We therefore conclude the trial court did not err in finding no Rule 600 violation.

Next, Ramseur contends the trial court erred in failing to suppress evidence obtained in the search of co-defendant Mayrant's home. *See* Appellant's Brief, at 44. Specifically, he asserts that the International Mobile Equipment Identity ("IMEI") number, found on an empty iPhone box in the home, and the cell phone records acquired therefrom, should be suppressed, as he believes the search was illegal.[4] *See id*.

As stated above, a defendant, like Ramseur, cannot prevail on his challenge to a suppression motion unless he first demonstrates standing and a privacy interest in the premises searched. *See Burton*, 973 A.2d at 435.

The trial court ruled, and we agree, that Ramseur lacks standing to challenge the cell phone records here. *See* Trial Court Opinion, 8/15/18, at 18. He was not present at the time of the search, and possession of the cell phone records was not an essential element of any of the crimes with which

---

[4] "Every phone has a unique IMEI number — 15 digits that tell you the make [and] model. . . ." *See* T-Mobile, https://www.t-mobile.com/resources/bring-your-own-phone.

he was charged or convicted. Moreover, he neither had a proprietary nor a possessory interest in Mayrant's cell phone records.

However, despite his lack of standing, Ramseur insists he has a cognizable privacy interest in Mayrant's phone records. *See* Appellant's Brief, at 44. As such, he concludes all location evidence derived from this information should be suppressed. *See id*., at 46-47.

Contrary to Ramseur's argument, he failed to prove he has a reasonable expectation of privacy in Mayrant's phone records. "While the Pennsylvania Constitution affords greater protection against unreasonable search and seizure than the Federal Constitution . . ., it does not afford an individual a legitimate expectation of privacy in the telephone bills of a third party. . . ." *Commonwealth v. Benson*, 10 A.3d 1268, 1273 (Pa. Super. 2010). Because Ramseur is not the owner of the telephone, he has no legitimate expectation of privacy here.

In his final issue, Ramseur contends the trial court erred in denying his motion to suppress all evidence obtained from the search of his home. Specifically, he raises three challenges to the admissibility of such evidence. First, Ramseur argues the search warrant contained material misrepresentations as to his involvement in uncharged burglaries and the time at which the search took place. *See* Appellant's Brief, at 54-56. Second, Ramseur asserts the warrant was overbroad on its face. *See id*., at 52-53. Finally, he alleges the warrant was not on the premises when it was executed.

As an initial matter, we find that Ramseur's challenge to the overbreadth of the warrant is waived. In doing so, we note that our standard of review is limited to the evidence presented at the suppression hearing. *See In re L.J.*, 79 A.3d 1073 (Pa. 2013). Because the transcript shows Ramseur failed to raise this argument at the hearing, we are unable to review this issue.

Next, Ramseur alleges the affidavit of probable cause contained false statements. *See* Appellant's Brief, at 54. In particular, Ramseur argues that Detective Steven Fink stated in the affidavit that he observed Ramseur committing a burglary, which is untrue. *See id*. Further, he asserts the police misrepresented the time as to when the police searched his home. *See id*., at 55.

In order to secure a valid search warrant, the issuing magistrate must be furnished with information sufficient to find that probable cause exists to conduct a search. *See Commonwealth v. Rapak*, 138 A.3d 666, 670 (Pa. Super. 2016). The standard for evaluating a search warrant is a "totality of the circumstances" test. *See Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018). On that basis, "[a] magistrate is to make a practical, common sense decision whether, given . . . the veracity and basis of knowledge of the persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place." *Id*. (citation and internal quotations omitted).

However, if a warrant is based upon an affidavit, containing deliberate or knowing misstatements of material fact, then the search warrant must be

rendered invalid. **See Commonwealth v. Cameron**, 664 A.2d 1364, 1367 (Pa. Super. 1995). The question of whether a misstatement was deliberately made must be answered by the trial court. **See Commonwealth v. Baker**, 24 A.3d 1006, 1017 (Pa. Super. 2011).

Here, we agree with the trial court that the affidavit of probable cause did not contain deliberate misstatements of material fact. **See** Trial Court Opinion, 8/15/18, at 22. While the affidavit may be imprecise in certain places, there is no indication that Detective Fink stated anywhere that he personally observed Ramseur commit a burglary. **See** N.T., Suppression Hearing, 12/5/17, at 74-75. What was written in the affidavit was that, during a car stop in the state of Delaware, Ramseur was found to be in possession of a ring that matched the description of one that was taken during a burglary. **See id**., at 75.

Moreover, as the trial court found, "there is no misrepresentation by the police on the times written on the warrant." Trial Court Opinion, 8/15/18, at 22. In fact, the search of Ramseur's home did not start until after the warrant had been approved. **See id**. Accordingly, this challenge merits no relief.

Next, Ramseur contends the search of his home was illegal because the police did not have the warrant on the premises at the time of the search, as required under **Commonwealth v. Melendez**, 676 A.2d 226 (Pa. 1996). **See** Appellant's Brief, at 58.

However, contrary to Ramseur's argument, **Melendez** does not require police to have a warrant on site in order to conduct a search. Rather, the

- 18 -

Pennsylvania Supreme Court in **Melendez** held that the police could neither detain an individual nor search the premises while waiting for the warrant to be approved. **See Melendez**, 676 A.2d at 227, 230-231. In any event, the trial court found that the warrant here was approved before police conducted their search of Ramseur's home. **See** Trial Court Opinion, 8/15/18, at 24. This finding is well supported by the record. Hence, no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.

Prothonotary

Date: 1/06/2020