587 A.2d 705

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alfred JASPER, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 14, 1989.

Decided March 13, 1991.

500

Marilyn J. Gelb, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Harriett Brumberg, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION

ZAPPALA, Justice.

We are compelled to review Appellant's judgment of sentence of death in accordance with Section 9711(h)(1) of the Sentencing Code, 42 Pa.C.S.A. After having found the Appellant guilty of first degree murder, the jury determined that the evidence supported two aggravating circumstances and no mitigating circumstances and imposed the death penalty.

Although the Appellant does not challenge the sufficiency of the evidence, we must review the record to determine whether the Commonwealth has established beyond a reasonable doubt the elements necessary to sustain a conviction of first degree murder. *Commonwealth v. Caldwell,* 516 Pa. 441, 532 A.2d 813 (1987); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), rehearing denied 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). Having reviewed the evidence, we are satisfied that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that the Appellant planned the killing and with premeditation and specific intent did execute the plan.

The evidence established that at 11:30 P.M. on April 6, 1984, the victim, John Wilson, was shot and killed while sitting on the passenger side of a vehicle parked in the 1400 block of North Broad Street in Philadelphia. The vehicle had been borrowed by Irving Hammond at the request of Wilson for the purpose of driving Wilson to specified locations. At the last location, Hammond parked the car while Wilson went into a nearby store. Shortly thereafter, Wilson returned to the parked vehicle and Hammond began to leave his parked position. Hammond then noticed someone crossing the street behind his vehicle, pull out a gun and fire four or five shots into the passenger window, wounding Wilson. Hearing the first gunshot, Hammond panicked, left the vehicle and ran south down Broad Street. When

the shooting ceased, Hammond returned to his vehicle and drove Wilson to the hospital where he later died.

The Commonwealth offered the testimony of John Jackson to establish that Appellant was the gunman. Jackson testified that he was inside a store on North Broad Street with the Appellant and Cecil Jasper, the Defendant's brother, when he saw the Hammond vehicle pull up and park. The Appellant then left the store and went outside to speak with Wilson for about fifteen minutes. When the Appellant returned to the store, he asked his brother where the gun was. After getting the gun and loading it, the Appellant stated that he was going to "shoot the mother f----", went outside toward the middle of Broad Street, squatted and fired.

Another witness, Christopher Key, testified that he was told by Jay Jackson that he saw the shooting and that Appellant was the person that shot John Wilson.

Although there existed conflicting evidence as to the identification of the Appellant as the gunman and the Appellant did present an alibi defense, sufficient evidence was presented from which the jury could conclude that the Appellant caused the death of John Wilson.[1]

 Appellant alleges that his trial counsel was ineffective in failing to file a pretrial suppression motion. After Appellant surrendered to the police, he was interviewed by detectives. No *Miranda* warnings were given, but Appellant was in the company of his attorney. The Appellant was asked several questions, including whether he owned a vehicle, in order to complete a form identified as 75–229. In response to the inquiry, the Appellant indicated that he did own a 1974 blue Audi. It is this response that

1. The Appellant argues that the lack of identification by Hammond is detrimental to the Commonwealth's case. It appears that Hammond testified that he could not see the assailant's face but still identified his picture from a photograph array. At trial, he likewise identified the Appellant as the gunman. Notwithstanding this conflicting evidence, it is clear that the jury chose to believe the testimony of Key and Jackson. This evidence is sufficient to sustain the conviction notwithstanding the lack of identification by Hammond.

Appellant argues should have been suppressed and trial counsel's failure to do so resulted in ineffectiveness. Appellant argues that disclosure of this information was critical in that another Commonwealth witness identified the 1974 blue Audi as parked near the crime scene on the date of the killing.

At the post verdict hearing, trial counsel testified that he believed such statement was not suppressible given that the information sought was "biographical". The Commonwealth argued successfully that the information received was nothing more than general information in response to a form and as such did not require the *Miranda* warnings. We agree. Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as part of an interrogation. *Miranda* warnings are required when a suspect is in custody and subjected to interrogation. *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513 (1988), *cert. denied, Yarris v. Pennsylvania*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989), *Commonwealth v. Bracey*, 501 Pa. 356, 461 A.2d 775 (1983), and *Commonwealth v. Davis*, 460 Pa. 37, 331 A.2d 406 (1975). In this instance, the interrogation had not yet begun; therefore *Miranda* warnings were not required.

Furthermore, in order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate that the underlying issue has some arguable merit and if so, that the course of action chosen by legal counsel had no reasonable basis to protect his client's interest. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Given the overwhelming evidence connecting the Appellant to the Audi, including a Department of Motor Vehicle check on ownership, it is clear that even if the Appellant's response was suppressed, the Commonwealth could establish ownership through other competent evidence. Accordingly, there being no merit to an attempt to suppress the Appellant's

statement regarding ownership of the Audi, trial counsel cannot be deemed ineffective.

Next, Appellant contends that his trial counsel was ineffective for failing to elicit testimony from various witnesses. Each of these witnesses would allegedly support the Appellant's contention that he in fact did not shoot the victim.

■ Appellant argues that his trial counsel was ineffective for failing to have the Appellant's brother, Cecil Jasper, testify. He asserts that Cecil's testimony would have refuted the testimony of John Jackson, which placed the Appellant in the store near the sight of the shooting at the time of the shooting. If believed, this testimony would have corroborated the Appellant's alibi defense.

When questioned at the post verdict hearing as to why he failed to elicit any testimony from Cecil, trial counsel testified that he chose not to call Cecil as a witness because Cecil had been arrested for conspiracy to commit murder arising out of the death of John Wilson. As such, trial counsel believed that Cecil's testimony would be considered self-serving since it would relieve the Appellant of any wrongdoing and therefore remove the conspiracy charge filed against Cecil. Thus, rather than helping the Appellant's case, trial counsel believed that Cecil's testimony would actually bolster the Commonwealth's position. Finally, trial counsel testified that his strategy was discussed with and concurred in by the Appellant. Because trial counsel had a reasonable basis for his actions and the Appellant concurred in this course of action, trial counsel cannot be considered ineffective.

■ Appellant also asserts that trial counsel was ineffective for failing to. call Jay Jackson as a witness. Christopher Key testified for the Commonwealth over vigorous objections that on the night of the shooting, he and Jay Jackson went to a movie and that several days later John Jackson had told Key that he (John Jackson) had witnessed the Appellant shooting the victim. At the post verdict

hearing, Jay Jackson testified that he was not with Key the night of the shooting but was with John Jackson playing basketball. Appellant argues that this evidence was critical to impeaching Key as a credible witness. Trial counsel testified that he did not know of Jay Jackson. Appellant contends that he did and in support thereof offers the following colloquy between the court and trial counsel.

> Trial Counsel: Your Honor, this witness indicated to the court and this jury that he is a liar and I want something on the record that I can show.
>
> * * * * * *
>
> Your honor, if I bring the guy that went with him to say it didn't happen, it will corroborate the fact he is a liar, will it not.

N.T., April 24, 1986, p. 3.66. Trial counsel's statement does not establish that he knew of Jay Jackson. It merely poses a hypothetical that if trial counsel produces a witness that will contradict Key, then Key will be established as a liar.

Notwithstanding Appellant's argument, it is clear that whether or not Key went to the movie is irrelevant, since John Jackson testified and identified the Appellant as the person who shot the decedent. Since trial counsel cannot be deemed ineffective for failing to present irrelevant testimony and it is clear Jay Jackson's testimony would be irrelevant, we cannot conclude that the post verdict court erred in finding trial counsel's stewardship constitutionally effective in this instance. *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983).

■ Next, Appellant asserts trial counsel was ineffective for failing to offer testimony from Melvin Tarleton. Tarleton testified that he went to the Jasper store on the night in question and found Cecil Jasper alone. As he was leaving the store, he heard gunshots and saw somebody shooting into the car across the street. His description of the assailant did not match the Appellant and he positively indicated that the assailant he observed was not the Appellant. Notwithstanding this incident, Tarleton failed to re-

late this incident to his girlfriend, who was sleeping in his car.

At the post verdict hearing, trial counsel testified that he was unaware of Tarleton. Furthermore, legal counsel, who was representing Appellant prior to trial counsel, testified that he gave trial counsel a list of potential witnesses but was unsure of whether Tarleton's name was listed. Based on this evidence and Tarleton's failure to relate the incident to his girlfriend, the trial court found his testimony incredible. On this record we must conclude that trial counsel was unaware of Tarleton and therefore cannot be deemed ineffective for failing to use him as a witness.

 Finally, Appellant contends that trial counsel was ineffective for failing to call Connie Benton as a witness at trial. At the post verdict hearing, Benton testified that Appellant was not the perpetrator of the killing of John Wilson on April 6, 1984. She indicated that she witnessed the killing and that the Appellant, whom she had seen on at least three occasions, was not the killer. Notwithstanding this critical evidence, Benton never contacted the police to give her statement.

The trial court held that the evidence presented at the post verdict hearings demonstrated that Benton was not known to trial counsel or his predecessor. Even Benton did not testify that she advised original trial counsel that she observed the shooting. Since trial counsel was unaware of Benton, he cannot be deemed ineffective for failing to call her to testify. *Commonwealth v. Anderson, supra, Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982).

 Appellant also argues that trial counsel was ineffective in the penalty phase of the trial by failing to request a jury instruction on "reasonable doubt". After the Appellant had been found guilty, the trial court convened the jury for the purpose of determining the appropriate punishment. After all of the evidence was presented, the trial judge instructed the jury, in part, as follows:

> Now, the Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. You know what that is.

N.T. May 6, 1986, p. 11.118. Appellant contends that the trial court was obligated to redefine "reasonable doubt" and trial counsel's failure to require the same constitutes ineffectiveness.

The record indicates that the trial judge correctly defined "reasonable doubt" in the guilt phase of the trial. In fact, the trial court's explanation of "reasonable doubt" consisted of approximately three transcribed pages. Furthermore, the penalty phase deliberations commenced within 24 hours of the jury instructions for the guilt phase. Under these circumstances, we see no need to reinstruct the jury on such a basic tenet, when in fact, the trial court extensively instructed the jury in such a close proximity in time to its later consideration. Therefore, trial counsel could not be ineffective for failing to pursue a meritless claim. *Commonwealth v. Pierce, supra.*[2]

The Appellant also contends that the trial court erred in failing to define "knowingly" in the penalty phase of the trial. One of the aggravating circumstances which the Commonwealth was asserting was § 9711(d)(7), that is, in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim. The trial judge did not define "knowingly" nor did defense counsel request any such instruction. During jury deliberations, the jury returned with an inquiry regarding the term "knowingly". Appellant argues that this request highlights the necessity to have "knowingly" defined.

---

2. Appellant's counsel also argues that under the Death Penalty Procedure Act, an instruction on reasonable doubt is mandatory in the penalty phase of the trial. The Act does provide that the court shall instruct the jury that aggravating circumstances must be proven by reasonable doubt. It does not require a definitional instruction of reasonable doubt. In many instances such an instruction will be required. In this instance, it was not.

With regard to the use of the word "knowingly", the jury asked, "Is the word "knowingly" inherent to aggravating circumstances on page one?" The trial judge responded in the affirmative. The Appellant would have us read this question as expressing a lack of understanding by the jury of the term "knowingly". He then suggests the jury should have been given a definition of "knowingly" such as is found in Section 302(b)(2) of the Crimes Code. 18 Pa.C. S.A. § 302(b)(2).[3] This we decline to do. The term "knowingly" used in Section 9711(d)(7), does not require a unique understanding of the word. In fact, the definition which Appellant suggests should have been given to the jury is similar, if not identical, to the definition contained in Webster's dictionary. Accordingly, there is no unusual legal significance to the term "knowingly" in this instance which would require knowledge other than its common usage. Therefore, trial counsel's failure to require a jury instruction of "knowingly" does not constitute ineffectiveness.

▮▮▮ The last issue questions the jury instruction with regard to mitigating circumstances. Specifically, the Appellant asserts that the trial court's instruction with regard to unanimity and mitigating circumstances was in violation of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

The trial judge's instruction to the jury with regard to the verdict is proper.

Remember again that your verdict must be unanimous. It cannot be reached by a majority vote or by any percentage but must be the verdict of each and every one of you.

Now, remember, also, and I stress again, remember that your verdict must be a sentence of death if you unani-

---

**3.** The Crimes Code defines "knowingly" as:

(2) A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the intended circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

mously find at least one aggravating circumstance and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life in prison.

\*　　\*　　\*　　\*　　\*　　\*

Now, if after conscientious and thorough deliberations, you are unable to agree on your findings and verdict, report that to me. If in my opinion further deliberations will not result in a unanimous agreement on the sentence, it will be my duty to sentence the Defendant to life imprisonment.

N.T., May 6, 1986, pp. 11.121–11.122. The problem arises out of the response to the jury's question regarding unanimity after deliberations had begun. In response to the following question, the trial judge responded in the affirmative.

Do we all have to agree whether a circumstance is true or not true?

*Id.* at 11.123. While the question is not absolutely clear as to which circumstances (i.e., aggravating or mitigating) the jury's question was directed to nothing on the record clarifies the confusion. Accordingly, it appears that the jury could have been misled into believing that a unanimous verdict was required in order to conclude a mitigating circumstance existed. Such a perception undoubtedly could have tainted the weighing process and the ultimate outcome.

Recently, in *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (1989), we addressed the *Mills* issue. There we had no problem in concluding that the jury instruction did not express a need for unanimity in determining the existence of a mitigating circumstance. However, the present appeal goes one step further. For in this instance, it is not the instruction which causes us concern but the response to a question posed for clarification. Since we cannot interrogate each juror as to his/her belief and the record is unclear as to what the question is referring to, we have no alterna-

tive but to conclude that the Appellant may have been prejudiced by the court's response. Accordingly, we must vacate the judgment of sentence and remand this matter to the Court of Common Pleas of Philadelphia County for a new sentencing hearing.

It is so ordered.[4]

LARSEN, J., concurs in the result.

---

**4.** The Appellant also asserts that the Death Penalty Statute is unconstitutional since it mandates the imposition of the death penalty if the aggravating circumstances outweigh any mitigating circumstances. This argument has no merit. See *Commonwealth v. Yarris, supra, Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986) and *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986). Also, Appellant argues that that trial court erred in permitting the Commonwealth to establish the significant criminal history through use of a FBI agent and Appellant's "rap sheet". This argument is likewise meritless.