Commonwealth v. Stitzel

194

C.P. of Berks County, no. 1903/95.

*Narcy L. Hughes, assistant district attorney,* for the Commonwealth.
*Emmanuel H. Dimitriou,* for defendant.

SMITH, *J.,* November 22, 1995—

FINDINGS OF FACT

(1) On March 20, 1995, at approximately 6:30 p.m., Maureen Dudley was a passenger in her boyfriend's pickup truck driving northbound from Lenhartsville towards Kempton on Route 143 in Berks County.

(2) Ms. Dudley testified at the preliminary hearing that as they came to a turn in the road she observed trucks approaching. Ms. Dudley testified that one of the trucks had only one headlight operating which made it difficult to distinguish between the two trucks.

(3) As Ms. Dudley's vehicle approached the cab of the second truck, she testified that she observed an object hanging off the side of the truck. (N.T. 6/12/95 at 8.) The object extended into Ms. Dudley's lane of travel to the extent that her boyfriend was forced to swerve off the road to the right to avoid a collision with the object.

(4) Ms. Dudley also testified that the truck's tires had either crossed the double yellow line separating traffic or were on the line. (N.T. at 10.)

(5) That same evening, shortly after 6 p.m., Sandra Felker testified that she too was travelling northbound on Route 143 from her place of work in the City of Reading.

(6) Ms. Felker testified that she was behind several cars all travelling northbound when she observed a tractor-trailer coming towards them through a curve in the road.

(7) Ms. Felker testified that the truck was "slightly on the wrong side of the road," when it was initially navigating the curve. However, Ms. Felker stated that "as he came closer and closer, he proceeded to go further and further on the wrong side of the road to the point that it scared me enough to cause me to slow down tremendously." (N.T. at 16.) Ms. Felker eventually pulled her car to the berm of the road to avoid a possible collision.

(8) At that time, Ms. Felker testified that she witnessed a collision between the tractor-trailer and a northbound pickup truck. Ms. Felker stated that the pickup was initially struck in the front. After the impact, Ms. Felker stated that the tractor-trailer attempted to turn back into its proper lane of travel. (N.T. at 18.) Ms. Felker further observed sparks flying as the truck continued to collide with the side of the pickup truck as the tractor-trailer continued moving.

(9) Ms. Felker stopped her car and ran to see if she could be of assistance. At that time, she observed that a second vehicle had also been involved in the accident. Ms. Felker then approached the pickup truck which had been struck and observed a male body inside the car. Ms. Felker remained at the scene and gave a statement to police.

(10) Ms. Felker testified that she did not observe on the tractor-trailer any type of flashers or flags hanging off the truck. (N.T. at 22, 24.)

(11) The tractor-trailer did not stop at the accident scene.

(12) Richard Kunkel Jr. testified that he observed the tractor-trailer moments after the accident occurred.

(13) Mr. Kunkel was travelling northbound on Route 143. Mr. Kunkel testified as to the following when he first observed the tractor-trailer:

"So all of a sudden, I saw this rig come out of the woods. It looked like it came out of a black curtain. There was no headlights. There was no running lights. There was nothing, but he was dead center in the middle of the road. He was halfway in my lane, halfway in his lane." (N.T. at 36.)

In response, Mr. Kunkel testified that he hit his brakes. He further testified that the tractor-trailer attempted to then get back into its lane, which it never completely did.

(14) Mr. Kunkel also stated that he observed something sticking off the trailer portion of the truck into the northbound lane of travel. As the truck came closer Mr. Kunkel observed that it was farm equipment hanging off the side of the truck. Mr. Kunkel swerved off the side of the road to avoid a collision.

(15) Mr. Kunkel testified that he observed no flags, signs, lights or other reflectors on the equipment or truck.

(16) As the truck passed, Mr. Kunkel observed the name "Stitzel's" on the side of the truck.

(17) Mr. Kunkel then proceeded to drive north on Route 143. About a quarter mile further he came upon the accident scene.

(18) Trooper Bruce A. Edwards of the Pennsylvania State Police, Hamburg Station, testified that after his investigation of the accident scene he went to Stitzel Farm Equipment Company.

(19) Trooper Edwards testified that he arrived at the farm at approximately 8:10 p.m. The accident scene was approximately five miles northeast of the Stitzel residence/business.

(20) When he arrived at the scene, Trooper Edwards spoke with Trooper James Lesko. Trooper Lesko pointed out to Trooper Edwards damage to various farm equipment on the tractor-trailer, presumably resulting from the collision. The troopers then measured the distance the equipment protruded off the side of the trailer. The furthest measurement was four feet three inches for the piece of equipment which struck the victim's truck.

(21) After speaking with Trooper Lesko, Trooper Edwards entered the business trailer located on the premises and spoke with Brian Stitzel, and Paul Stitzel, defendant's father. Defendant, Kevin Stitzel, was also sitting in the trailer.

(22) Trooper Edwards explained to Paul and Brian Stitzel that there had been a fatal accident in which one of their trucks was involved. Trooper Edwards then asked who was driving the trucks that night. Brian Stitzel said that he didn't know. After further discussion, Trooper Edwards testified that defendant stood up and walked over to him.

(23) Trooper Edwards testified that defendant asked, "Was somebody really killed?" After Trooper Edwards responded "Yes," he testified he said to defendant, "You know who was driving." When defendant said nothing, Trooper Edwards testified he said, "You were driving that, weren't you?" Defendant then said "Yes."

(24) During this discussion with defendant, Trooper Edwards testified that he could smell the odor of an alcoholic beverage on defendant's breath. (N.T. at 58.) Trooper Edwards also testified that he could smell the cigarettes he'd seen defendant smoking, and a minty odor, from the candies that the trooper had seen defendant eating.

(25) When Trooper Edwards later spoke with defendant again approximately 10 minutes later, he testified that he was "getting the strong odor of alcohol coming off his breath." (N.T. at 59.) Trooper Edwards asked defendant if he had anything to drink since his return. Trooper Edwards testified defendant replied "I haven't had anything alcoholic to drink today."

(26) Trooper Edwards also noted that defendant's eyes were very glassy and glazed looking. Moreover, his movements were slow and methodical. (N.T. at 59.)

(27) Trooper Edwards then placed defendant under arrest and transported him back to the State Police Barracks in Hamburg. There, Trooper Edwards explained to defendant Pennsylvania's Implied Consent Law.[1] After that, defendant was transported to the Lehigh Valley Medical Center for a blood test. Defendant refused the test at 10:31 p.m. on March 20, 1995.

(28) Trooper Gary R. Steinbacher of the Pennsylvania State Police testified that the gross weight of the tractor-trailer driven by defendant was 50,000 pounds. The width of the semitrailer was 8 feet 6 inches. There was an overhang on both the passenger and driver's side making the total width of the semitrailer 16 feet.

(29) An autopsy report was submitted by the Commonwealth at the preliminary hearing. The report iden-

---

1. 75 Pa.C.S. §1547.

tifies the victim of the accident as Gary G. Brobst, age 17. The report identifies the cause of death as "fracture of base of skull with hemorrhage into region of brain stem."

(30) Defendant was subsequently arrested and charged with: involuntary manslaughter; homicide by vehicle; driving under the influence of alcohol; accidents involving death or injury; and, multiple summary charges.[2]

## SUPPRESSION ISSUES

Defendant raises a single suppression issue for this court's review: Should statements made by defendant be suppressed on the grounds the statements made to the police were made in the absence of *Miranda* warnings and were the result of coercion or duress.

## CONCLUSIONS OF LAW

(1) When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of defendant's constitutional rights. *Commonwealth v. Haynes,* 395 Pa. Super. 322, 577 A.2d 564 (1990), *appeal denied,* 527 Pa. 598, 589 A.2d 689 (1991). Moreover, the burden is on the Commonwealth to establish by a preponderance of evidence that the challenged evidence is admissible. *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992). Finally, the suppression court is entitled to believe all, part, or none of a witness' testimony. *Commonwealth v. Williams,* 411 Pa. Super. 586, 602 A.2d 350 (1992).

2. 18 Pa.C.S. §2504; 75 Pa.C.S. §3732; 75 Pa.C.S. §3731(a)(1); and, 75 Pa.C.S. §3542(a), respectively.

(2) Defendant's sole argument for suppression purposes is that any and all statements or admissions made to police should be suppressed on the grounds that he was not informed of his *Miranda* rights, and further all statements made were the result of coercion or duress.

(3) The primary statement or admissions of record made by defendant occurred when he asked Trooper Edwards, "Was somebody really killed?" After Trooper Edwards responded "Yes" he then said to defendant, "You know who was driving." When defendant said nothing, Trooper Edwards testified he said, "You were driving that, weren't you?" Defendant then said, "Yes." The only other statement made by defendant was when he stated "I haven't had anything alcoholic to drink today," after Trooper Edwards asked him if he had been drinking. All statements made by defendant were made at the Stitzel Farm.

(4) In the landmark case of *Pennsylvania v. Bruder,* 488 U.S. 9 (1988), the United States Supreme Court held that police need only give *Miranda* warnings while detaining a suspect if the suspect is actually placed under arrest or when questioning is so long or coercive to approximate the atmosphere of a station house interrogation, *i.e.,* custodial interrogation.

(5) In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the court stated: "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Moreover, "[p]olice detention only becomes custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of a formal arrest."

*Cullenen v. Commonwealth,* 138 Pa. Commw. 508, 518, 588 A.2d 988, 993 (1991).

(6) Recently in discussing the issue of custodial interrogation, the Pennsylvania Supreme Court held:

"[T]he test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Commonwealth v. Williams,* 539 Pa. 61, 74, 650 A.2d 420, 427 (1994).

(7) In this case, defendant made several statements to the police over the course of their investigation at Stitzel Farm. This court can find no evidence to support a finding that defendant was questioned in a manner rising to the level of custodial interrogation.

(8) The questions asked by the troopers were of the type usually asked in the course of an accident investigation. For example, in *Commonwealth v. Jasper,* 526 Pa. 497, 587 A.2d 705 (1991), the court held that an officer's questions regarding ownership of a vehicle for report purposes was not the type of information requiring *Miranda* warnings. The court held:

"Generally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires *Miranda* warnings since it is not information generally considered as part of an interrogation." *Jasper, supra* at 503, 587 A.2d at 708-709.

So, too, in this case, Trooper Edwards' questions regarding whether defendant was driving the truck were the type of questions typically asked in any accident investigation, and for that reason did not require *Miranda* warnings.

(9) Furthermore, defendant was not physically restrained when he was questioned, nor was his freedom of movement impaired.

(10) Based on all these factors, this court cannot conclude that defendant could reasonably believe his freedom of action was being restricted. For these reasons, *Miranda* warnings were not required. Accordingly, defendant's motion to suppress statements should be denied.

(11) This court now enters the following order:

## ORDER

And now, to wit, November 22, 1995, after a hearing held and upon further consideration of defendant's omnibus pretrial motion to suppress evidence, it is hereby ordered that defendant's motion to suppress is hereby denied. Furthermore, as the Commonwealth has presented prima facie evidence to support all charges listed in their information, defendant's motion for habeas corpus is also denied.