J-A12003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES KERR, | |
| Appellant | No. 308 WDA 2018 |

Appeal from the Judgment of Sentence Entered January 9, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000561-2017

BEFORE:  BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 10, 2019**

Appellant, Charles Kerr, appeals from the judgment of sentence of an aggregate term of 11½ to 23 months' incarceration, followed by five years' probation, imposed after a jury convicted him of various offenses, including statutory sexual assault.  Appellant raises a plethora of issues on appeal, including a challenge to the trial court's denial of his pretrial motion to suppress evidence, and claims that the court erred in ruling on certain discovery and evidentiary issues.  After careful review, we affirm.

The trial court provided the following summary of the evidence presented at Appellant's trial:

> Briefly, the evidence presented at trial established that on February 20, 2016, [Appellant], then 36 years old, contacted [K.E.], then 15 years old, online via the Kik [Messenger] app.  The two messaged back[]and[]forth through Kik, then [later] through texting.  During these conversations, [Appellant] encouraged [K.E.] to send him naked pictures of herself and she complied.

[K.E.] told her mother she was going out to her friend's house and would be spending the night. As this was a common occurrence, her mother agreed. [Appellant] drove from his residence in Greene County and picked [K.E.] up near her home in Plum Boro[ugh]. The two went to Boyce Park and walked around and during this time, [Appellant] kissed [K.E.]. They got back into [Appellant's] car and he drove towards his house, making stops at a[n] Eat 'n Park restaurant in Washington County and a Goodwill store near the restaurant. They arrived at [Appellant's] house after 10 p.m. and went directly to [Appellant's] bedroom where they had vaginal and oral intercourse and watched a movie before going to sleep. In the morning, they woke and had vaginal and oral intercourse again and showered after. [Appellant] drove [K.E.] home and dropped her off at a bar near her house. [K.E.] went into her house, greeted her parents and showered again. Then [K.E.] called her friend, at whose house she told her parents she was spending the night, and told her what happened. [K.E.'s] friend told her mother, who called [K.E.'s] mother, who confronted [K.E.] and then called the police.

Trial Court Opinion (TCO), 7/18/18, at 2.

Based on this evidence, Appellant was charged

with two (2) counts each of Involuntary Deviate Sexual Intercourse of a Person Under 16[1] and Unlawful Contact with a Minor[2][;] with four (4) counts of Statutory Sexual Assault[3][;] and with one (1) count each of Corruption of Minors,[4] Interference with Custody of a Minor,[5] Criminal Use of a Communication Facility[,][6] and Indecent Assault of a Person Under 16.[7] A jury trial was held … from September 27, 2017 to October 5, 2017[,] and at its conclusion, [Appellant] was convicted of two (2) counts of Statutory Sexual Assault, Corruption of Minors, Interference with Custody of a Minor, Criminal Use of a Communication Facility[,] and Indecent Assault of a Person Under 1[6]. He was acquitted of the rem[aining] charges. He appeared before [the trial] [c]ourt on January 9, 2018, when he was sentenced to a term of imprisonment of 11½ to 23 months[' incarceration], with a subsequent term of probation of five (5) years. Timely Post-Sentence Motions were filed and were denied on January 30, 2018. This appeal followed.

[1] 18 Pa.C.S.[] § 3123(a)(7)….
[2] 18 Pa.C.S.[] § 6318(a)(1) … and § 6318(a)(5)….
[3] 18 Pa.C.S.[] § 3122.1(b)[.]

> ⁴ 18 Pa.C.S.[] § 6301(a)(1)(ii)[.]
> ⁵ 18 Pa.C.S.[] § 2904(a)[.]
> ⁶ 18 Pa.C.S.[] § 7512(a)[.]
> ⁷ 18 Pa.C.S.[] § 3126(a)(7)[.]

*Id.* at 1-2.

After filing a notice of appeal, Appellant timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court thereafter filed a responsive Rule 1925(a) opinion. Herein, Appellant presents the following four issues for our review:

> I. Did the [trial] court err by denying [Appellant] discovery, his discovery request(s)[,] and his ability to obtain, review, possess, use and reproduce discovery?
>
> II. Did the [trial] court err, after 5 days of trial, by denying defense counsel's request for a short recess before closing arguments to prepare his closing for the jury, and than [*sic*] recessing after defense counsel's closing so the prosecution could prepare closing aguements [*sic*]?
>
> III. Did the trial court err under the Best Evidence Rule by allowing the Commonwealth to use a hand[-]typed recreation of evidence in lieu of the actual phone extraction report/texts and communications[?]
>
> IV. Did the trial court err by failing to suppress and/or exclude statements made by [] Appellant at the time of arrest that were made when Appellant was not ***Mirandized***,[1] made to his attorney and taken out of context to prove guilt at trial[?]

Appellant's Brief at 6-7.²

---

[1] ***Miranda v. Arizona***, 86 S.Ct. 1602 (1966).

² Appellant's first and third issues each contain four sub-claims, thus totaling 10 issues for our review. As the trial court observed in light of the 31 claims Appellant set forth in his Rule 1925(b) statement, ***see*** TCO at 3 n.8, this Court

Appellant first contends that the court erred in denying his pretrial motion to compel discovery under Pa.R.Crim.P. 573, and that the Commonwealth failed to turn over material evidence in violation of **Brady v. Maryland**, 373 U.S. 83 (1963). Specifically, Appellant sought discovery of a CD containing approximately 40,000 data files that were extracted from the victim's cellular phone. While the Commonwealth turned over some of that data to Appellant, it refused to provide him with a copy of the entire phone extraction because it included thousands of images of child pornography (namely, nude photographs of the victim). However, the Commonwealth allowed Appellant and his defense counsel to view the entire CD at the District Attorney's Office. Appellant insists that this access was not sufficient, as he was only able to review the CD on two occasions for approximately 8 hours combined, and he was not permitted to copy or photograph any of the data.

Appellant also contends that the files on the CD were downloaded in a confusing fashion, and the Commonwealth denied his request for their 'tech person' to assist him in searching the data. Despite these difficulties,

---

has "held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to them." **Estate of Lakatosh**, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995); **see also Commonwealth v. Showers**, 782 A.2d 1010, 1016 (Pa. Super. 2001) (quoting Judge Ruggiero Aldisert's statement that where "an appellant's brief … contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness") (citations omitted).

Appellant "found evidence on the [CD] that appeared to be exculpatory[,] as it showed the 'victim' in conversation with an out[-]of[-]state boyfriend/significant other on the day of the alleged incident[,] which supported the contention in Appellant's testimony that she had left with someone else." Appellant's Brief at 27-28. Appellant contends that his discovery of this information on the CD demonstrates that the Commonwealth committed a **Brady** violation, and that the court erred by denying his motion to compel the Commonwealth to provide him with a copy of entire contents of the CD, or at least the non-pornographic information contained thereon.

Initially, we have explained that Rule 573 "declares a preference for informal discovery, contemplating that the parties will 'make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute.'" **Commonwealth v. Maldonodo**, 173 A.3d 769, 773 (Pa. Super. 2017) (quoting Pa.R.Crim.P. 573(A)). "Rule 573 states that informal discovery must take place before a party may request discovery via motion." **Id.** If such motion is filed, the rule sets forth the items of discovery that the Commonwealth must supply. **See id.** Pertinent to the present case, Rule 573 states:

> **(B) Disclosure by the Commonwealth.**
>
> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided

- 5 -

they are **material** to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence **favorable to the accused that is material either to guilt or to punishment**, and is within the possession or control of the attorney for the Commonwealth;

Pa.R.Crim.P. 573(1)(a) (emphasis added).

In **Maldonodo**, we explained:

Rule 573 does not abridge or limit the Commonwealth's duty to provide discovery pursuant to **Brady** … and its progeny. "In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." **Commonwealth v. Burke**, 566 Pa. 402, 781 A.2d 1136, 1141 (2001) (quotation marks omitted). "There are three components of a true **Brady** violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." **Strickler v. Greene**, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

However, the rule imposes greater obligations upon prosecutors than the **Brady** requirements. … Nevertheless, our cases frequently analyze whether a particular discovery sanction was justified by analyzing whether the evidence was required to be disclosed pursuant to **Brady**. **See e.g.**[,] **Commonwealth v. Robinson**, 122 A.3d 367 (Pa. Super. 2015) (reversing order precluding Commonwealth from introducing evidence, analyzing **Brady**). That one would draw upon **Brady** principles in determining materiality is unsurprising since the rule limits disclosure to "material" items, Pa.R.Crim.P. 573(B), and "material for **Brady** purposes" has a particular meaning. **See e.g.**[,] **Commonwealth v. Willis**, 616 Pa. 48, 46 A.3d 648 (2012) (noting that admissibility at trial is not a prerequisite to disclosure under **Brady**).

- 6 -

*Maldonodo*, 173 A.3d at 774. Specifically, our Supreme Court has declared that,

> the touchstone of materiality is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Therefore, nondisclosed favorable evidence which is not admissible at trial may nonetheless be considered material for *Brady* purposes where the Commonwealth's failure to disclose such evidence adversely affected the presentation of the defense at trial, or the defense's preparation for trial, such that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. We emphasize, however, that "mere speculation" by a defendant will not be sufficient to meet this burden. Rather, in order to establish a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed, **a defendant necessarily must identify specific evidence or information that would have been uncovered, and explain how that evidence or information would have changed the result of the proceeding**.

*Commonwealth v. Willis*, 46 A.3d 648, 670 (Pa. 2012) (emphasis added; internal citations omitted).

Appellant has failed to meet this burden. Initially, the Assistant District Attorney (ADA) prosecuting this case repeatedly stated on the record that he had provided defense counsel with the material information that he had found when reviewing the data extracted from the victim's phone. *See* N.T. Hearing, 9/26/17, at 12 (ADA's stating that he provided discovery to Appellant on several occasions beginning in April of 2017, including "[p]rintouts of some sections of conversations between the victim and [Appellant] from the victim's phone"); N.T. Hearing, 9/27/17, at 12-13 (ADA's stating: "I looked through the phone to the best of my ability [and] … did not see anything that jumped

- 7 -

out as exculpatory. If [there] was, I would have provided it to defense counsel."); *id.* at 13 (ADA's explaining that he printed out "numerous things from the phone and sen[t] it in paper form" to defense counsel); N.T. Trial, 10/2/17, at 205 (ADA's stating that, in regard to the phone extraction, he "printed out pertinent pages from the extraction that [he] thought counsel would need, knowing that he was still going to come in person and watch"). Additionally, Appellant and his defense counsel were given unlimited opportunities to review the entire contents of the CD. The fact that defense counsel only viewed the CD twice, for a total of eight hours, was not the fault of the Commonwealth, where nothing in the record indicates that the Commonwealth limited Appellant's ability to review that material.

Moreover, it was during Appellant's review of the CD at the District Attorney's Office that he ostensibly uncovered the information about the other individual with whom the victim was communicating on, or close to, the day she met with Appellant. Thus, the Commonwealth did not withhold this information from Appellant in violation of ***Brady***. While Appellant insists a ***Brady*** violation occurred because "the [c]ourt ... refuse[d] to allow any testimony about [that other individual], after the victim confirmed she [k]new him and may have been talking to him around that time[,]" he provides no citation to where in the record this decision by the court occurred. Appellant's Brief at 28. In any event, it is the Commonwealth, not the trial court, that has disclosure obligations under ***Brady***; thus, Appellant's nonsensical argument is meritless.

Appellant also alleges that he found "numerous videos and images and texts in the phone which directly contradicted statements the victim made during the investigation, such as being a virgin, never seeing a penis, and her testimony that she didn't have a boyfriend at the time." Appellant's Brief at 33. Again, the Commonwealth clearly did not withhold this evidence from Appellant, as he found it while reviewing the CD at the District Attorney's Office. To the extent that Appellant speculates, generally, that there was more material information on the CD that he was unable to uncover, he has failed to identify what, specifically, that information would entail or how it would have changed the outcome of his trial. *See Willis, supra*. Notably, Appellant does not contend that since trial, the Commonwealth has denied him access to the CD. Thus, he has not demonstrated an abuse of discretion in the court's ruling on his motion to compel discovery of the contents of the CD, nor that the Commonwealth violated the dictates of *Brady*.

Appellant also contends, in a sub-claim under his first issue, that the court abused its discretion in denying his motion for a continuance of trial, filed in September of 2017, on the basis that the Commonwealth had not turned over a copy of the entire contents of the CD containing all of the data extracted from the victim's phone. Notably, even though Appellant did not have a copy of the CD, he was provided access to review it beginning in April of 2017. The fact that he only examined the data for a total of eight hours over the following *five months* before filing his continuance request was his fault alone, and it did not obligate the court to grant him a continuance.

Therefore, we find no abuse of discretion by the trial court. **_See_**
**_Commonwealth v. Hansley_**, 24 A.3d 410, 418 (Pa. Super. 2011) ("The
grant of a continuance is discretionary and a refusal to grant is reversible error
only if prejudice or a palpable and manifest abuse of discretion is
demonstrated.") (citation omitted).

In Appellant's final sub-claim under his first issue, he alleges that the
trial court had _ex parte_ communications with the Commonwealth about his
motion to compel discovery, as evidenced by the fact that the court knew —
without any on-the-record information — that defense counsel had been late
to one scheduled viewing of the CD. Appellant's Brief at 30. As the
Commonwealth points out, Appellant never raised this claim of _ex parte_
communications before the trial court. **_See_** Commonwealth's Brief at 19 n. 8.
Thus, it is waived. **_See_** Pa.R.A.P. 302(a) ("Issues not raised in the lower court
are waived and cannot be raised for the first time on appeal.").

In Appellant's second issue, he contends that the trial court erred by
refusing defense counsel's request for a short recess before closing
arguments. **_See_** N.T. Trial, 10/2/17, at 546. According to Appellant, while
his "trial was not the longest or most difficult case[,]" the "closing arguments
required the recollection of substantial facts to be recalled and re-presented
[_sic_] in closing." Appellant's Brief at 38. Appellant also challenges the court's
decision to break for a lunch recess before the Commonwealth's closing
argument. Appellant insists that this decision, made after the court denied

defense counsel's request for a recess before closing, showed that the court was bias and partial towards the Commonwealth.

We view the court's denial of a recess request as akin to the denial of a continuance and, thus, we apply an abuse-of-discretion standard of review. *See Hansley, supra*. Here, Appellant has not demonstrated an abuse of discretion by the court. As the Commonwealth stresses,

> at the end of testimony the previous day - October 3 - [the court] had told both attorneys that [it] expected closing arguments to take place the following morning. … [T]he only testimony that took place on the morning of October 4 was the resumption of that of [Appellant] himself — [Appellant] had begun his testimony the previous afternoon — and a very brief character witness called by the defense. Thus, defense counsel not only had been put on notice as to when his closing argument was to take place, but he also would have heard very few additional facts that morning, all of which [came] from the mouth of [Appellant]. Given that counsel was surely familiar with the version of events that [Appellant] wished to present to the jury, those facts would have been quite easy to incorporate into a closing argument that counsel had had more than enough time to prepare the previous evening. For this reason, the trial court certainly cannot be said to have abused its discretion in denying a [recess] so that counsel could work on his argument further.

Commonwealth's Brief at 20-21. We agree with the Commonwealth. We also observe that Appellant fails to identify any way in which his closing argument would have been different had his request for a recess been granted. Therefore, he has not demonstrated that the court abused its discretion by denying his recess request, or that he suffered any prejudice in light of that decision.

- 11 -

We also agree with the Commonwealth's position that Appellant waived his claim that the court erred by recessing for lunch before the prosecutor's closing argument. Appellant never objected when the court stated it was recessing at that time, nor raised any issue with the court's decision to do so when the trial reconvened for the Commonwealth's closing argument. **See** N.T. Trial, 10/2/17, at 566. Thus, he cannot now claim, for the first time on appeal, that the court's conduct prejudiced him, or that it evidenced that the court was biased in favor of the Commonwealth. **See** Pa.R.A.P. 302(a).

In Appellant's third issue, he avers that the trial court erred by allowing the Commonwealth to admit evidence that violated the "best evidence" rule, which provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Appellant explains that, prior to trial, the Commonwealth provided him with approximately 50 pages of data taken from the victim's phone. This "mini-extraction," as Appellant calls it, "was what the [Commonwealth] wanted to use as evidence, which is why Appellant was given a copy of it." Appellant's Brief at 42. However, according to Appellant, the Commonwealth did not seek to admit at trial the original pages provided to Appellant during discovery; instead, Appellant alleges that the prosecutor "took conversations from the mini-extraction and typed [them] into his own form in a Microsoft-word [*sic*] document" and sought to admit it as Exhibit 1. **Id.** at 42; **see** N.T. Trial, 9/28/17, at 154-55. Appellant "objected on the grounds of the 'Best Evidence

Rule' because the [prosecutor] actually had the original conversation and it appeared to be different in form, if not substance. The [c]ourt overruled Appellant's objection and allowed it in." *Id.*; *see* N.T. Trial, 9/28/17, at 155.

Additionally, Appellant also takes issue with the court's admission of the Commonwealth's Exhibit 9 later at trial. Specifically, the Commonwealth sought to admit a document containing Kik app messages between the victim and Appellant. *See* N.T. Trial, 10/2/17, at 201-02. Appellant again objected on the basis of the best evidence rule and, in response, the Commonwealth stated that the document was "the original from the extraction." *Id.* at 203. Accordingly, the court overruled Appellant's objection.

Appellant now contends that the court's admission of these two exhibits was reversible error. We are not convinced. Initially, we note that "[q]uestions regarding the admissibility of evidence rest within the trial judge's discretion, and an appellate court will reverse the judge's decision only for an abuse of discretion." *Commonwealth v. Vandivner*, 962 A.2d 1170, 1179 (Pa. 2009) (citations omitted).

Here, the Commonwealth contends that "the exhibits at issue were, in fact, the original messages" extracted from the victim's phone. Commonwealth's Brief at 25. The record demonstrates that the trial court accepted the Commonwealth's claim, at least pertaining to Exhibit 9, and we cannot deem that decision an abuse of discretion. Notably, the exhibits are not contained in the certified record and, according to Appellant, they are "gone, missing, misplaced or otherwise." Appellant's Brief at 41. Thus, we

- 13 -

are unable to verify Appellant's allegation that the exhibits were 'handmade' replicas of the original, 'mini-extraction' documents provided to Appellant in discovery.

Moreover, Appellant offers no discussion of what, precisely, was set forth in the at-issue exhibits, nor presents any argument that they were material to proving his guilt at trial. As this Court has explained, "if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced **only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case**." **Commonwealth v. Green**, 162 A.3d 509, 518 (Pa. Super. 2017) (emphasis added). In other words, the content of the Commonwealth's at-issue exhibits "must be material to, and not just mere evidence of, the issues at bar for the best evidence rule to apply." **Id.** Appellant has not explained what the content of the exhibits was, let alone presented any argument regarding the materiality thereof. Thus, he has failed to demonstrate that the court abused its discretion in overruling his best evidence objections and admitting those exhibits.[3]

We next address Appellant's sub-claim that the trial court erred by not allowing him to admit the contents of the 'mini-extraction' during the

---

[3] To the extent Appellant claims that the exhibits should not have been admitted because he "had never seen [them] before trial, or before the [Commonwealth] had planned on putting [them] into evidence[,]" he did not object to the admission of the exhibits on this basis. Appellant's Brief at 42. Thus, this argument is waived. **See** Pa.R.A.P. 302(a).

testimony of the Commonwealth's expert witness, Matthew Rosenberg, who had conducted the extraction of data from the victim's phone. Appellant also claims that the court improperly precluded him from questioning Rosenberg about the contents of the 'mini-extraction.'

Initially, at trial, the Commonwealth clarified that the "extraction report" written by Rosenberg was only "the first two pages of the phone extraction that ha[s] the person's name, the phone number, that information." N.T. Trial, 9/28/17, at 144-45. While the term 'report' had been misleadingly used to refer to the "actual extraction, [*i.e.*,] text messages, [and] things like that[,]" *id.* at 145, Rosenberg did not draft any of that content, but merely extracted it from the victim's phone. Indeed, Rosenberg testified that he did not even read the contents of the data he extracted. *Id.* at 143. Instead, he had simply placed that information onto a CD and provided it to the detectives investigating this case. *Id.*

In light of this record, we discern no error in the trial court's precluding Appellant from questioning Rosenberg about, or seeking to admit through his testimony, the content of the extraction from the victim's phone. As the Commonwealth stresses, "Rosenberg merely extracted the text messages, photos and other items from the victim's phone without reviewing the particular content. Therefore, any attempt by the defense to introduce any of the phone's specific content into evidence through this witness could not have been proper and, as a result, it was not an abuse of the trial court's discretion to not have allowed it." Commonwealth's Brief at 27. We agree.

In Appellant's next sub-claim under his third issue, he seemingly contends that the trial court erred by not allowing him to recall the victim to the stand to lay a foundation for the admission of the extraction report. We agree with the Commonwealth that Appellant's argument in support of this claim is incoherent. **See** Appellant's Brief at 45. Thus, we deem it waived. **See Commonwealth v. Hallock**, 722 A.2d 180, 181 (Pa. Super. 1998) ("We decline to become [the] appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

In Appellant's final sub-claim under this issue, he argues that the trial court erred by not permitting him to admit an exhibit during the Commonwealth's case-in-chief. Specifically, during the cross-examination of Detective Mark Restori, defense counsel questioned the detective about a document identified as a "lab submittal form." N.T. Trial, 10/2/17, at 345. After further questioning, defense counsel sought to admit that document into evidence. **Id.** at 348. The Commonwealth objected on the basis that the defense could not admit evidence during the prosecution's case-in-chief. **Id.** The trial court sustained that objection, instructing defense counsel that he would not need to recall the detective during the defense's case, but could simply "move that [the document] be admitted" into evidence at that time. **Id.**

- 16 -

Appellant now contends that the court's decision "show[ed] a continuing bias from the [c]ourt to slow down and preclude the [d]efense from making a coherent defense to the jury." Appellant's Brief at 48. This argument is not only waived because Appellant never raised it below, *see* Pa.R.A.P. 302(a), but it is meritless. The court sustained the Commonwealth's objection, and informed defense counsel that he could admit the document during Appellant's case-in-chief. Appellant cites no legal authority indicating that the court's ruling was erroneous, and nothing in the record supports his assertion that the court's decision was based on bias or impartiality. Therefore, Appellant's final sub-claim under his third issue is meritless.

Lastly, in Appellant's fourth claim for our review, he maintains that the trial court erred by denying his pretrial motion to suppress statements he made while in police custody. Preliminarily, we note:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, Appellant sought suppression of two statements he made in the presence of Waynesburg Police Officer Marcus Simms. At the suppression hearing, Officer Simms testified that, while Appellant was in custody at the Waynesburg Police Department awaiting transport to Allegheny County, his attorney arrived and spoke with Appellant. ***See*** N.T. Suppression Hearing, 9/27/17, at 17-18. Defense counsel sat with Appellant on a bench in the "patrol room and began reading over what the arrest warrant was for, [the] charges and everything." ***Id.*** at 19. At this point, Officer Simms was sitting at his desk approximately 5 feet from where Appellant and defense counsel were located. ***Id.*** Officer Simms testified that when defense counsel read the date of the alleged incident to Appellant, Appellant said, "That was a long time ago." ***Id.*** at 20. Additionally, when counsel finished "reading the … affidavit of probable cause, [Appellant] said, 'If I'm found guilty of some of these, … how much time will I get….'" ***Id.*** Officer Simms testified that at no point did Appellant and/or defense counsel ask for privacy, or for Officer Simms to leave the area where their conversation was taking place. ***Id.*** Additionally, the officer testified that defense counsel spoke to the officer "at different points during that time[,]" thus demonstrating that counsel and Appellant were aware of the officer's presence close by. ***Id.*** On cross-examination, Officer Simms acknowledged that Appellant had not been provided with ***Miranda*** warnings before conversing with defense counsel.

Appellant sought suppression of the above two statements he made to his attorney on the grounds that they were protected by the attorney-client privilege, he had not received **Miranda** warnings before making them, and they were taken out of context. The court denied suppression, and we discern no abuse of discretion in that decision. As the Commonwealth contends,

in order for the attorney-client privilege to apply, a **confidential** communication between a lawyer and his client is required. **Commonwealth v. DuPont**, 730 A.2d 970, 977 (Pa. Super. 1999), *appeal denied,* 749 A.2d 466 (Pa. 2000). **See also Commonwealth v. Mrozek**, 657 A.2d 997, 998 (Pa. Super. 1995), *appeal denied*, 668 A.2d 1127 (Pa. 1995) (one requirement for the assertion of the attorney-client privilege is that the communication relates to a fact of which the attorney was informed by his client "without the presence of strangers"). Here, … the at-issue statements made by [Appellant] were clearly done so in the presence of Officer Simms; in fact, the officer even testified that he — Simms — was conversing with [defense counsel] at the same general time and from the exact same vantage point that he was at when he heard the statements by [Appellant] (*see* [Suppression Hearing at] 20). Because of the location of the officer and the fact that [Appellant] and [defense counsel] were aware of his presence, the trial court ruled that no attorney-client privilege existed and, thus, [it] denied [Appellant's] suppression claim. As the law supports the court's ruling, there was clearly no error.

[Appellant] also contends that his suppression motion should have been granted because he had not received any warnings pursuant to **Miranda**…. But it is clear that **Miranda** warnings are only required when a suspect is in custody and subjected to interrogation. **See Commonwealth v. Jasper**, 587 A.2d 705, 709 (Pa. 1991). Where there has been no interrogation, no **Miranda** warnings are necessary. **Id.** In the instant case, Officer Simms testified in no uncertain terms at the suppression hearing that he never questioned [Appellant] at any point and had, in fact, told [Appellant] that he would not be questioned by the Waynesburg Police ([N.T. Suppression Hearing at] 27-28). Thus, because no interrogation took place, no **Miranda** warnings were required, and, as a result, suppression was not warranted

based on the fact that such warnings were not given by Officer Simms.

Lastly, [Appellant] claims that suppression should have been granted because his statements were taken out of context. Specifically, he argues that the things that he said did "not insinuate that the underlying offense had occurred" (*see* [Appellant's Brief at] 51). The Commonwealth would respectfully submit that whether or not [Appellant's] statements were an admission that he had had sexual intercourse with the 15-year-old victim was a matter for the jury to decide and that any ambiguity in those statements was not the basis for suppression. Consequently, [the trial court] did not err in failing to grant suppression on this basis either.

Commonwealth's Brief at 33-35 (footnote omitted).

We are convinced by the Commonwealth's argument, and the case law on which it relies, that the trial court did not err in denying Appellant's motion to suppress the statements he made to defense counsel in front of Officer Simms. Those non-private, non-interrogation remarks were not protected by the attorney-client privilege, and **Miranda** warnings were not required. Additionally, it was for the fact-finder to determine the meaning and implications of Appellant's statements. As such, Appellant's fourth and final issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/10/2019